**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHE STERCKX, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LUCKIN COFFEE INC., JENNY ZHIYA QIAN, REINOUT HENDRIK SCHAKEL, CHARLES ZHENGYAO LU, JIAN LIU, JINYI GUO, HUI LI, ERHAI LIU, CREDIT SUISSE SECURITIES (USA) LLC, MORGAN STANLEY & CO. LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, KEYBANC CAPITAL MARKETS INC., and NEEDHAM & COMPANY, LLC,<br><br>    Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Christophe Sterckx ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon,

*inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Luckin Coffee Inc. ("Luckin" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who: (1) purchased or otherwise acquired publicly traded Luckin securities from May 17, 2019 through April 2, 2020, inclusive (the "Class Period"); (2) purchased or otherwise acquired Luckin ADSs in or traceable to the Company's public offering of ADSs conducted on or around May 17, 2019 (the "IPO"); and/or (3) purchased or otherwise acquired Luckin ADSs in or traceable to the Company's public offering of ADSs conducted on or around January 10, 2020 (the "2020 Offering", and with the IPO, the "Offerings"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Act of 1933 (the "Securities Act") and Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), Section 22 of the Securities Act, and Section 27 of the Exchange Act as the alleged misstatements entered and the subsequent damages took place in this judicial district, and the Company conducts substantial business in this district.   Pursuant to the deposit agreement referenced in the Registration Statement (defined below) the Company consents to "consents and submits to the jurisdiction of any state or federal court in the State of New York in which any Proceeding may be instituted."

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Luckin securities during the Class Period and was economically damaged thereby.

7.      Defendant Luckin purports to engage in the retail sale of freshly brewed drinks, and pre-made food and beverage items in the People's Republic of China. The Company offers freshly brewed drinks, including freshly brewed coffee and non-coffee drinks; and food and beverage items, such as light meals. Luckin is incorporated in the Cayman Islands and its headquarters are located at 17F Block A, Tefang Portman Tower No. 81 Zhanhong Road Siming District,

Xiamen, Fujian People's Republic of China, 361008. Luckin's American Depository Shares ("ADSs") trade on the NASDAQ under the ticker symbol "LK."

8.    Defendant Jenny Zhiya Qian ("Qian") has served as the Company's Chief Executive Officer ("CEO") and Director throughout the Class Period.

9.    Defendant Reinout Hendrik Schakel ("Schakel") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10.    Defendants Qian and Schakel are collectively referred to herein as the "Officer Defendants."

11.    Each of the Officer Defendants:

    (a)    directly participated in the management of the Company;

    (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)    was privy to confidential proprietary information concerning the Company and its business and Luckintions;

    (d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.    Luckin is liable for the acts of the Officer Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Officer Defendants and other employees and agents of the Company is similarly imputed to Luckin under *respondeat superior* and agency principles.

14.    Defendant Charles Zhengyao Lu ("Lu") is, and was at all relevant times, the Chairman of the Board of Directors of Luckin. Defendant Lu signed the registration statement for the Offerings and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offerings Materials.

15.    Defendant Jian Liu ("Liu") is, and was at all relevant times, a Director of Luckin and Luckin's Chief Operating Officer. Defendant Liu signed the registration statement for the Offerings and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offerings Materials.

16.    Defendant Jinyi Guo ("Guo") is, and was at all relevant times, a Director of Luckin. Defendant Guo signed the registration statement for the Offerings and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offerings Materials.

17.    Defendant Hui Li ("Li") is, and was at all relevant times, a Director of Luckin. Defendant Knudsen signed the registration statement for the Offerings and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offerings Materials.

18. Defendant Erhai Liu ("E. Liu") is, and was at all relevant times, a Director of Luckin. Defendant E. Liu signed the registration statement for the Offerings and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offerings Materials.

19. Defendants Lu, Liu, Guo, Li and E. Liu are sometimes referred to herein as the "Director Defendants."

20. Each of the Officer Defendants and Director Defendants:

(a) signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Luckin investors, all motivated by their own and the Company's financial interests;

(b) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

21.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a financial services company located in New York, New York. Credit Suisse served as an underwriter for the Offerings, helping to draft and disseminate the Registration Statements and to solicit investors to purchase Luckin ADSs issued pursuant thereto.

22.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley ") is a financial services company located in New York, New York. Morgan Stanley served as an underwriter for the Offerings, helping to draft and disseminate the Registration Statements and to solicit investors to purchase Luckin ADSs issued pursuant thereto.

23.     Defendant China International Capital Corporation Hong Kong Securities Limited ("CICC") is a financial services company located in Beijing, China. CICC served as an underwriter for the Offerings, helping to draft and disseminate the Registration Statements and to solicit investors to purchase Luckin ADSs issued pursuant thereto.

24.     Defendant Haitong International Securities Company Limited ("Haitong") is a financial services company located in New York, New York. Haitong served as an underwriter for the Offerings, helping to draft and disseminate the Registration Statements and to solicit investors to purchase Luckin ADSs issued pursuant thereto.

25.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") is a financial services company located in Cleveland, Ohio. KeyBanc served as an underwriter for the Offerings, helping to draft and disseminate the Registration Statements and to solicit investors to purchase Luckin ADSs issued pursuant thereto.

26.     Defendant Needham & Company, LLC ("Needham") is a financial services company located in New York, New York. Needham served as an underwriter for the Offerings, helping

to draft and disseminate the Registration Statements and to solicit investors to purchase Luckin ADSs issued pursuant thereto.

27.     Defendants Credit Suisse, Morgan Stanley, CICC, Haitong, KeyBanc, and Needham are referred to herein as the "Underwriter Defendants."

28.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Luckin, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)     The Underwriter Defendants also demanded and obtained an agreement from Luckin and the Officer and Director Defendants that Luckin would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Luckin had purchased millions of dollars in directors' and officers' liability insurance.

(c)     Representatives of the Underwriter Defendants also assisted Luckin and the Officer and Director Defendants (together, the "Individual Defendants") in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Luckin, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal,

confidential, current corporate information concerning Luckin's most up-to-date operational and financial results and prospects.

(d)      In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Luckin's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Luckin securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Luckin would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Luckin's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Luckin's existing problems as detailed herein.

(e)      The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

29.      Luckin and the Underwriter Defendants entered into an underwriting agreement with respect to the ADSs being offered in the IPO (the "Underwriting Agreement"). Subject to the terms and conditions of the underwriting agreement, each of the Underwriter Defendants severally agreed to purchase from Luckin the number of ADSs set forth opposite its name below at a price of US$17.00 per ADS payable in cash on the closing date of the IPO:

| Underwriter | Number of ADSs |
| --- | --- |
| Credit Suisse Securities (USA) LLC | 20,130,000 |
| Morgan Stanley & Co. LLC | 4,950,000 |
| China International Capital Corporation Hong Kong Securities Limited | 3,300,000 |
| Haitong International Securities Company Limited | 3,300,000 |

| KeyBanc Capital Markets Inc. | 742,500 |
| Needham & Company, LLC | 577,500 |
| Total | 33,000,000 |

30.     Defendants Luckin, the Officer Defendants, the Director Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Offerings

31.     On April 22, 2019, the Company filed with the SEC a registration statement on Form F-1 for the IPO, which, after an amendment, was declared effective on May 16, 2019 (the Form F-1, together with all amendments, is referred to herein as the "Registration Statement"). On May 17, 2019, the Company filed a prospectus for the IPO on Form 424B4 (the "Prospectus"), which incorporated and formed part of the Registration Statement. The Registration Statement was used to sell to the investing public approximately 33 million Luckin ADSs, representing 264 million Luckin Class A common shares, at $17.00 per ADS. Defendants generated $561 million in gross offering proceeds from their sale of Luckin ADSs in the IPO.

32.     The Registration Statement stated the following concerning the Company's internal controls over financial reporting:

> Prior to this offering, we have been a private company with limited accounting and financial reporting personnel and other resources to address our internal controls and procedures. In connection with the audit of our consolidated financial statements as of and for the year ended December 31, 2018, we and our independent registered public accounting firm identified two material weaknesses in our internal control over financial reporting. As defined in the standards established by the Public Company Accounting Oversight Board of the United States, a "material weakness" is a deficiency, or a combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.

> The material weaknesses identified are our company's lack of sufficient accounting and financial reporting personnel with requisite knowledge and experience in application of United States generally accepted accounting principles and Securities and Exchange Commission rules, and lack of financial

reporting policies and procedures that are commensurate with U.S. GAAP and SEC reporting and compliance requirements.

We are in the process of implementing a number of measures to address these material weaknesses identified, including: (i) hiring additional accounting and financial reporting personnel with U.S. GAAP and SEC reporting experience, (ii) expanding the capabilities of existing accounting and financial reporting personnel through continuous training and education in the accounting and reporting requirements under U.S. GAAP, and SEC rules and regulations, (iii) developing, communicating and implementing an accounting policy manual for our accounting and financial reporting personnel for recurring transactions and period-end closing processes, and (iv) establishing effective monitoring and oversight controls for non-recurring and complex transactions to ensure the accuracy and completeness of our company's consolidated financial statements and related disclosures.

33.     On January 7, 2020, the Company filed with the SEC a registration statement on Form F-1 for the 2020 Offering which was declared effective on January 9, 2020 (the Form F-1 is referred to herein as the "2020 Registration Statement", and together with the Registration Statement, the "Registration Statements"). On January 10, 2020, the Company filed a prospectus for the 2020 Offering on Form 424B4 (the "Prospectus"), which incorporated and formed part of the 2020 Registration Statement. The 2020 Registration Statement was used to sell to the investing public approximately 9 million Luckin ADSs, representing 264 million Luckin Class A common shares, at $42.00 per ADS. Defendants generated approximately $385 million in gross offering proceeds from their sale of Luckin ADSs in the IPO.

34.     The 2020 Registration Statement stated the following concerning the Company's internal controls over financial reporting:

In connection with the audit of our consolidated financial statements as of and for the year ended December 31, 2018, we and our independent registered public accounting firm identified two material weaknesses in our internal control over financial reporting. As defined in the standards established by the Public Company Accounting Oversight Board of the United States, a "material weakness" is a deficiency, or a combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material

misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis.

The material weaknesses identified are our company's lack of sufficient accounting and financial reporting personnel with requisite knowledge and experience in application of United States generally accepted accounting principles and Securities and Exchange Commission rules, and lack of financial reporting policies and procedures that are commensurate with U.S. GAAP and SEC reporting and compliance requirements.

To remediate our identified material weakness and improve our internal control over financial reporting, we are implementing a number of measures to address these material weaknesses identified, including: (i) hiring additional accounting and financial reporting personnel with U.S. GAAP and SEC reporting experience, (ii) expanding the capabilities of existing accounting and financial reporting personnel through regular training and education in the accounting and reporting requirements under U.S. GAAP, and SEC rules and regulations, (iii) developing, communicating and implementing an accounting policy manual for our accounting and financial reporting personnel for recurring transactions and period-end closing processes, and (iv) establishing effective monitoring and oversight controls for non-recurring and complex transactions to ensure the accuracy and completeness of our company's consolidated financial statements and related disclosures.

35. The Registration Statements were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

36. The Registration Statements failed to disclose that the Company's internal controls over financial reporting were so ineffective that they would fail to prevent Luckin's financial results' false inflation due to fabricated transactions by Luckin's Chief Operating Officer, Liu, and thus likely requiring restatement.

37. The 2020 Registration Statement incorporated the false financial results for the first nine months of 2019, stating as follows:

| | Notes | For the nine months ended September 30, | | |
|---|---|---|---|---|
| | | 2018 | 2019 | |
| | | RMB | RMB | US$ |
| **Net revenues:** | | | | |
| Freshly brewed drinks | | 302,759 | 2,165,614 | 302,981 |
| Other products | | 44,249 | 642,662 | 89,912 |
| Others | | 28,254 | 120,940 | 16,920 |
| **Total net revenues** | | **375,262** | **2,929,216** | **409,813** |
| Cost of materials | | (236,838) | (1,462,763) | (204,648) |
| Store rental and other operating costs | | (292,710) | (1,131,136) | (158,252) |
| Depreciation expenses | | (47,811) | (280,979) | (39,310) |
| Sales and marketing expenses | | (457,728) | (1,115,872) | (156,116) |
| General and administrative expenses | | (232,236) | (684,836) | (95,812) |
| Store preopening and other expenses | | (62,174) | (61,318) | (8,579) |
| **Total operating expenses** | | **(1,329,497)** | **(4,736,904)** | **(662,717)** |
| **Operating loss** | | **(954,235)** | **(1,807,688)** | **(252,904)** |
| Interest income | | 3,716 | 47,538 | 6,651 |
| Interest and financing expenses | | (7,982) | (24,098) | (3,371) |
| Foreign exchange gain, net | | 15,627 | 29,741 | 4,161 |
| Other expenses | | (6,288) | (2,092) | (293) |
| Change in the fair value of warrant liability | 7 | (991) | (8,322) | (1,164) |
| **Net loss before income taxes** | | **(950,153)** | **(1,764,921)** | **(246,920)** |
| Income tax expense | | | | |
| **Net loss** | | **(950,153)** | **(1,764,921)** | **(246,920)** |
| Add: accretion to redemption value of convertible redeemable preferred shares | 12 | (793,992) | (552,036) | (77,233) |
| Add: deemed distribution to a certain holder of Series B Preferred Shares | | — | (2,127) | (298) |
| **Net loss attributable to the Company's Ordinary Shareholders** | | **(1,744,145)** | **(2,319,084)** | **(324,451)** |
| **Loss per share:** | | | | |
| Basic and diluted | 12 | (2.81) | (1.54) | (0.22) |
| **Weighted average shares outstanding used in calculating basic and diluted loss per share:** | | | | |
| Basic and diluted | 12 | 620,975,275 | 1,502,999,505 | 1,502,999,505 |
| **Other comprehensive loss, net of tax of nil:** | | | | |
| Foreign currency translation difference, net of tax of nil | | 7,732 | 100,824 | 14,106 |
| **Total comprehensive loss** | | **(1,736,413)** | **(2,218,260)** | **(310,345)** |

38.     The 2020 Registration Statement also reported key operating data for the first nine months of 2019, stating as follows:

| | For the three months ended or as of | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | December 31, 2017 | March 31, 2018 | June 30, 2018 | September 30, 2018 | December 31, 2018 | March 31, 2019 | June 30, 2019 | September 30, 2019 |
| **Total coffee stores** | **9** | **290** | **624** | **1,189** | **2,073** | **2,370** | **2,963** | **3,680** |
| Pick-up stores | 4 | 83 | 356 | 903 | 1,811 | 2,163 | 2,741 | 3,433 |
| Relax stores | 5 | 15 | 22 | 45 | 86 | 109 | 123 | 138 |
| Delivery kitchens | 0 | 192 | 246 | 241 | 176 | 98 | 99 | 109 |
| **Cumulative number of transacting customers (in thousands)[1]** | **11.1** | **485.0** | **2,917.8** | **5,984.3** | **12,529.5** | **16,872.3** | **22,777.5** | **30,723.7** |
| **Average monthly transacting customers (in thousands)[2]** | **4.0** | **179.5** | **1,207.6** | **1,877.4** | **4,325.9** | **4,402.0** | **6,166.0** | **9,339.7** |
| **Average monthly total items sold (in thousands)[3]** | **8.6** | **487.5** | **4,001.0** | **7,760.3** | **17,645.1** | **16,275.8** | **27,593.0** | **44,244.6** |
| Freshly brewed drinks | 8.0 | 451.7 | 3,743.7 | 6,220.4 | 13,418.8 | 13,077.2 | 21,055.7 | 34,655.4 |
| Other products | 0.5 | 35.8 | 257.3 | 1,539.9 | 4,226.4 | 3,198.6 | 6,537.3 | 9,589.2 |

39.     Hence, the 2020 Registration Statement was also false and misleading for the reasons described in paragraph 56, below.

**<u>Materially False and Misleading Statements During the Class Period</u>**

40.     On August 14, 2019, Luckin issued a press release announcing its financial and operating results for 2Q19 (the "2Q19 Press Release"). The 2Q19 Press Release highlighted that "[a]verage monthly total items sold in the quarter were 27.6 million, representing an increase of 589.7% from 4.0 million in the second quarter of 2018."; and "[s]tore level operating profit in the quarter was RMB55.8 million (US$8.1 million), decreasing from a loss of RMB81.7 million in the second quarter of 2018."

41.     More specifically, the 2Q19 Press Release stated that "[n]et revenues from products growth was primarily driven by a significant increase in the number of transacting customers, an increase in effective selling prices, and the number of products sold."

42.     Additionally, the 2Q19 Press Release stated that "[n]et revenues from other products were RMB210.8 million (US$30.7 million), representing 23.2% of total net revenues in the second quarter of 2019, compared to RMB8.4 million, or 7.0% of total net revenues, in the second quarter of 2018."

43.     The 2Q19 Press Release also reported that "[s]ales and marketing expenses were RMB390.1 million (US$56.8 million), representing an increase of 119.1% from RMB178.1 million in the second quarter of 2018, mainly due to increases in advertising expenses and delivery expenses as the Company launched new marketing initiatives and entered into new cities. Furthermore, free product promotion expenses increased in line with the growth of new transacting customers."

44.     Finally, the 2Q19 Press Release advised that "[f]or third quarter ending 30 September 2019, the Company expects net revenues from products to be between RMB1.35 billion and RMB1.45 billion."

45.     On August 14, 2019, Luckin filed a Report of Foreign Private Issuer on Form 6-K with the SEC, signed by Defendant Schakel, which appended the 2Q19 Press Release as an exhibit, reiterating the false and misleading financial metrics reported in that press release.

46.     On November 13, 2019, Luckin issued a press release announcing its financial and operating results for 3Q19 (the "3Q19 Press Release"). The 3Q19 Press Release highlighted that "[a]verage monthly total items sold in the quarter were 44.2 million, representing an increase of 470.1% from 7.8 million in the third quarter of 2018"; "[a]verage total net revenues from

products per store in the quarter were RMB449.6 thousand (US$62.9 thousand), representing an increase of 79.5% from RMB250.5 thousand in the same quarter of 2018"; and "[s]tore level operating profit in the quarter was RMB186.3 million (US$26.1 million), or 12.5% of net revenues from products, compared to a loss of RMB126.0 million in the third quarter of 2018."

47.    More specifically, the 3Q19 Press Release stated that "[n]et revenues from products growth was primarily driven by [*inter alia*] . . . an increase in effective selling price, and an increase in the number of products sold per transacting customer."

48.    Additionally, the 3Q19 Press Release stated that "[n]et revenues from other products were RMB347.8 million (US$48.7 million), representing 22.6% of total net revenues in the third quarter of 2019, compared to RMB34.4 million, or 14.3% of total net revenues, in the third quarter of 2018."

49.    The 3Q19 Press Release also reported that "[s]ales and marketing expenses were RMB557.7 million (US$78.0 million), representing an increase of 147.6% from RMB225.3 million in the third quarter of 2018, mainly due to increases in advertising expenses as the Company launched new marketing initiatives, entered into new cities and launched Luckin Tea as an independent brand."

50.    Finally, the 3Q19 Press Release advised that "[f]or the fourth quarter ending December 31, 2019, the Company expects net revenues from products to be between RMB2.1 billion and RMB2.2 billion," which "excludes any revenue generated from stores operated under the new retail partnership model."

51.    On the same day as the release of the 3Q19 Press Release, Luckin issued a 3Q19 earnings release presentation (the "3Q19 Presentation"). According to that presentation, Luckin's items per-store per-day amounted to 444 in 3Q19, compared to 285 in the same quarter the year prior.

52.     The 3Q19 Presentation also cited a net selling price per item of RMB 11.2 as one of the Company's key drivers, representing a quarter-over-quarter increase of approximately 7%, and a year-over-year increase of approximately 15%.

53.     In discussing Luckin's "[s]trategic investment in branding," the 3Q19 Presentation touted "[o]ther new customer acquisition costs"—calculated as "(advertising expenses + other sales and marketing expenses excluding delivery) / number of new transacting customers during the period"—of RMB 48.7 per customer for 3Q19 compared to RMB 42.3 for the same quarter the year prior, resulting in 7.9 million new transacting customers as compared to 3.1 million new transacting customers in the same quarter the year prior.

54.     Finally, the 3Q19 Presentation represented that the percentage of revenue from "other products" had drastically increased quarter-over-quarter, with "other products" representing 22.6% of revenue in 3Q19, compared to 14.3% the same quarter the year prior. It also noted that net revenues from "other products" increased to RMB 348 million in 3Q19, compared to RMB 34 million the same quarter the year prior.

55.     On November 20, 2019, Luckin filed a Report of Foreign Private Issuer on Form 6-K with the SEC, signed by Defendant Schakel, which appended the 3Q19 Press Release as an exhibit, reiterating the false and misleading financial metrics reported in that press release.

56.     The statements contained in ¶¶40-55 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) certain of Luckin's financial performance metrics, including per-store per-day sales, net selling price per item, advertising expenses, and revenue contribution from

"other products" were inflated; (2) Luckin's financial results thus overstated the Company's financial health and were consequently unreliable and would likely require restatement; and (3) as a result, Defendants' statements about Luckin's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

### THE TRUTH EMERGES

57.     On January 31, 2020, Muddy Waters published a report alleging that Luckin had fabricated certain of the Company's financial performance metrics, beginning in 3Q19. The Muddy Waters Report purported to cite "smoking gun evidence," including, inter alia, thousands of hours of store video, thousands of customer receipts, and diligent monitoring of the Company's mobile application metrics, which allegedly showed that, since 3Q19, Luckin had inflated its perstore per-day sales figures, its net selling price per item, its advertising expenses, and its revenue contribution from "other products."

58.     With respect to Luckin's number of items per-store per-day, the Muddy Waters Report stated that this number "was inflated by at least 69% in 2019 3Q and 88% in 2019 4Q, supported by 11,260 hours of store traffic video" recorded by thousands of on-the-ground staff associated with the author, and that the report's "offline tracking results of tracking 981 store-days from 2019 4Q showed 263 items per store per day only," compared to the Company's report of 444 items per store per day for 3Q19 and an estimated 495 items per store per day for 4Q19 based on the Company's guidance for that quarter. Specifically, the Muddy Waters Report estimated that 483-506 items per-store per-day was "implied by 4Q Guidance Product Revenue Guidance of RMB 2.1 billion to RMB 2.2 billion, divided by Net selling price per item of RMB 11.8 (Assuming Luckin to report [sic] 5% sequential growth from 2019 3Q of RMB 11.2) and average store number of 4,094."

59.     With respect to Luckin's net selling price per item, the Muddy Waters Report disclosed that its staff "gathered 25,843 customer receipts and found that Luckin inflated its net selling price per item by at least RMB 1.23 or 12.3% to artificially sustain the business model," and that, "[i]n the real case, the store level loss is high at 24.7%-28%." The report also noted that "25,843 receipts indicate 1.08 and 1.75 items per order for pick-ups and delivery orders respectively or blended 1.14," and that "[t]his marked a continuously downward trend of items per order from 1.74 in 2018 1Q to 1.14 in 2019 4Q."

60.     With respect to Luckin's advertising expenses, the Muddy Waters Report asserted that "[t]hird party media tracking showed that Luckin overstated its 2019 3Q advertising expenses by over 150," and that "[i]t's possible that Luckin recycled its overstated advertising expense back to inflate revenue and store-level profit."

61.     Finally, the Muddy Waters Report asserted that Luckin's revenue contribution from "other products" was "only about 6% in 2019 3Q, representing nearly 400% inflation, as shown by [inter alia] 25,843 customer receipts." Specifically, it noted that "for the 981 store-days we tracked, only 2% of the pick-up orders were found containing non-freshly brewed products," and that "[t]he 25,843 receipts further indicate that 4.9% and 17.5% of items for pick-up and delivery orders were 'other products', blended 6.2%, i.e. inflated by nearly 400%."

62.     On this news, Luckin's ADS price fell $3.91 per share, or 10.74%, to close at $32.49 per share on January 31, 2020.

63.     In response to the Muddy Waters Report, Luckin denied all of the claims therein. In addition, investor Andrew Left of Citron disclosed that he had taken a long position in Luckin, and, citing data from BCC, stated that the Muddy Waters Report would "fall short on accuracy."

64.     On February 12, 2020, J Capital, a China-focused investment research firm, published a

more detailed report supporting the findings in the Muddy Waters Report and specifically

rebutting Citron's statements in support of Luckin. The J Capital Report stated, in part:

> Citron cited data from "Biz Con China," referring to Business Connect China
> (BCC), a Shanghai-based expert-network company that also sells data on listed,
> Chinese-domiciled companies. We managed to see a copy of BCC's report, and
> right there in the first paragraph is written: "Based on BCC's tracking, we are
> skeptical about some of Luckin's reported figures." The next paragraph begins:
> ***"Luckin's reported figure of 444 items sold per day in 3Q19 is likely to be higher
> than their actual sales." Citron seems to have missed this.*** We know BCC to
> operate with a high degree of integrity but think the methodology used to collect
> the data was flawed. BCC itself warns clients that "we believe  BCC's tracking
> results portray the optimal situation that Luckin can reach." Notably, ***BCC's
> tracking results show lower numbers than LK management reports.***
>
> *     *     *
>
> It's not all bad news. ***In several areas, BCC's data backed up the data in the
> Anonymous report. Citron conveniently forgot to mention that in the tweet.***
> Luckin has so far issued a blanket denial without providing confirmatory evidence.
> We are short Luckin and ***believe that the work of the anonymous short sellers was
> credible and complementary to our own analysis of the company's reports.***

(Emphasis added.)

65.     Then, on April 2, 2020, Luckin disclosed that an internal investigation had found that

millions of dollars in sales were fabricated. The press release stated the following:

> **BEIJING, China, April 2, 2020 (GLOBE NEWSWIRE)** — Luckin Coffee Inc.
> ("Luckin Coffee" or the "Company") (NASDAQ: LK) today announced that the
> Company's Board of Directors (the "Board") has formed a special committee (the
> "Special Committee") to oversee an internal investigation into certain issues raised
> to the Board's attention during the audit of the consolidated financial statements
> for the fiscal year ended December 31, 2019 (the "Internal Investigation").
>
> The Special Committee is comprised of three independent directors of the Board,
> Mr. Sean Shao, Mr. Tianruo Pu and Mr. Wai Yuen Chong, with Mr. Shao serving
> as its chairman. The Special Committee has retained independent advisors,
> including independent legal advisors and forensic accountants, in connection with
> the Internal Investigation. The Special Committee has retained Kirkland & Ellis as
> its independent outside counsel. Kirkland & Ellis is assisted by FTI Consulting as
> an independent forensic accounting expert. The Internal Investigation is at a
> preliminary stage.

*The Special Committee today brought to the attention of the Board information indicating that, beginning in the second quarter of 2019, Mr. Jian Liu, the chief operating officer and a director of the Company, and several employees reporting to him, had engaged in certain misconduct, including fabricating certain transactions. The Special Committee recommended certain interim remedial measures, including the suspension of Mr. Jian Liu and such employees implicated in the misconduct and the suspension and termination of contracts and dealings with the parties involved in the identified fabricated transactions. The Board accepted the Special Committee's recommendations and implemented them with respect to the currently identified individuals and parties involved in the fabricated transactions.* The Company will take all appropriate actions, including legal actions, against the individuals responsible for the misconduct.*

*The information identified at this preliminary stage of the Internal Investigation indicates that the aggregate sales amount associated with the fabricated transactions from the second quarter of 2019 to the fourth quarter of 2019 amount to around RMB2.2 billion. Certain costs and expenses were also substantially inflated by fabricated transactions during this period.* The above figure has not been independently verified by the Special Committee, its advisors or the Company's independent auditor, and is subject to change as the Internal Investigation proceeds. The Company is assessing the overall financial impact of the misconduct on its financial statements. As a result, investors should no longer rely upon the Company's previous financial statements and earning releases for the nine months ended September 30, 2019 and the two quarters starting April 1, 2019 and ended September 30, 2019, including the prior guidance on net revenues from products for the fourth quarter of 2019, and other communications relating to these consolidated financial statements. The investigation is ongoing and the Company will continue to assess its previously published financials and other potential adjustments.

Luckin Coffee will release additional information concerning the Internal Investigation in due course and is committed to taking appropriate measures to improve its internal controls.

(Emphasis added.)

66.    On this news, Luckin ADSs plummeted $19.80 per ADS or approximately 75.6% to close $6.40 per ADS on April 2, 2020, damaging investors.

67.    Since the IPO, and as a result of the disclosure of material adverse facts omitted from Luckin's Registration Statements, Luckin's stock price has fallen well below its IPO and 2020 Offering price, damaging Plaintiffs and Class members.

20

68.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Luckin securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Included in the Class are all persons and entities who purchased RealReal ADSs pursuant and/or traceable to the Company's Registration Statements issued in connection with the Company's IPO and 2020 Offering and all persons and entities who purchased Luckin ADSs during the Class Period at artificially inflated prices and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of Luckin, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

70.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Luckin securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

71.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

72.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

73.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Securities Act and Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Luckin;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Luckin to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filings;

- whether the prices of Luckin' securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

22

74.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

75.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Luckin shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

- As a public issuer, Luckin filed periodic public reports with the SEC;

- Luckin regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Luckin was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

76.    Based on the foregoing, the market for Luckin securities promptly digested current information regarding Luckin from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

77.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

<u>**COUNT I**</u>

<u>**Violations of Section 11 of the Securities Act**</u>
<u>**Against All Defendants**</u>

78.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  This claim is not based on and does not sound in fraud.

79.     This claim is brought by Plaintiff and on behalf of other members of the Class who purchased or otherwise acquired Luckin securities pursuant to or traceable to the Company's Offerings. Each member of the Class acquired his, her, or its shares pursuant to and/or traceable to, and in reliance on, the Registration Statements. Luckin is the issuer of the securities through the Registration Statements, on which the Individual and Director Defendants were signatories.

80.     Defendants issued and disseminated, and caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements and/or omissions to the investing public that were contained in the Registration Statements, which misrepresented or failed to disclose, among other things, the facts as set forth above. By reason of the conduct alleged herein, each Defendants violated and/or controlled a person who violated Section 11 of the Securities Act, 15 U.S.C. §77k.

81.     Luckin is the issuer of the securities sold via the Registration Statement. As issuer of these securities, the Company is strictly liable to Plaintiffs and the Class members for the material misstatements and omissions contained therein.

82.     At the times they obtained their shares of the Company, Plaintiffs and the members of the Class did so without knowledge of the facts concerning the misstatements and omissions alleged herein.

83.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Registration Statements that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of both Registration Statements. It is therefore timely.

84.     At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of the Offerings securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.

85.     By reason of the foregoing, Plaintiff and the other members of the Class are entitled to damages as measured by the provisions of Section 11(e), 15 U.S.C. 77K(e), from the Defendants and each of them, jointly and severally.

**COUNT II**
**Violations of Section 15 of the Securities Act Against**
**the Individual Defendants**

86.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     This claim is asserted against the Individual Defendants, each of whom was a control person of the Company at relevant times.

88.     The Individual Defendants were control persons of the Company by virtue of, inter alia, their positions as senior officers and/or directors of the Company, and they were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statements.

89.     The Individual Defendants did not make reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were accurate complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

90.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statements and within three years after Luckin securities were sold to the Class in connection with the Offerings. It is therefore timely.

91.     By reason of the above conduct, for which the Company's is primarily liable, as set forth above, Individual Defendants are jointly and severally liable with and to the same extent as Luckin pursuant to Section 15 of the Securities Action, 15 U.S.C. 77o.

## COUNT III
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against Luckin and the Officer Defendants

92.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

94.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

95.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that Luckinted as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Luckin securities during the Class Period.

96.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Luckin were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Luckin, their control over, and/or receipt and/or modification of Luckin's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Luckin, participated in the fraudulent scheme alleged herein.

97.      Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Luckin personnel to members of the investing public, including Plaintiff and the Class.

98.     As a result of the foregoing, the market price of Luckin securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Luckin securities during the Class Period in purchasing Luckin securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

99.     Had Plaintiff and the other members of the Class been aware that the market price of Luckin securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Luckin securities at the artificially inflated prices that they did, or at all.

100.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

101.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Luckin securities during the Class Period.

**COUNT IV**
**Violations of Section 20(a) of the Exchange Act**
**Against the Officer Defendants**

102.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.     During the Class Period, the Officer Defendants participated in the Luckintion and management of Luckin, and conducted and participated, directly and indirectly, in the conduct of Luckin's business affairs. Because of their senior positions, they knew the adverse non-public information about Luckin's misstatement of revenue and profit and false financial statements.

104.     As officers and/or directors of a publicly owned company, the Officer Defendants had a duty to disseminate accurate and truthful information with respect to Luckin's financial condition and results of Luckintions, and to correct promptly any public statements issued by Luckin which had become materially false or misleading.

105.     Because of their positions of control and authority as senior officers, the Officer Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Luckin disseminated in the marketplace during the Class Period concerning Luckin's results of Luckintions. Throughout the Class Period, the Officer Defendants exercised their power and authority to cause Luckin to engage in the wrongful acts complained of herein. The Officer Defendants therefore, were "controlling persons" of Luckin within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Luckin securities.

106.     By reason of the above conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Luckin.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)      awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 2, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*